## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WENDY NAIMI,** | : | **Civil No. 4:24-CV-01391** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **FRANK BISIGNANO,** | : | |
| **Commissioner of Social Security**[1] | : | |
| | : | |
| **Defendant.** | : | |

## <u>MEMORANDUM OPINION</u>

### I.    <u>Introduction</u>

This Social Security appeal presents a parable regarding the perils of *pro se* litigation in this complex regulatory field. For the past eight years, since January of 2018, the plaintiff, Wendy Naimi, has pursued claims for Social Security benefits, legal forays which she has taken unschooled in the law and unaided by counsel who could have guided her through this legal terrain. Consequently, Naimi's *pro se* efforts have been entirely unavailing, and her current submissions to this Court

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

reveal that Naimi may still labor under some basic confusion regarding the temporal scope of her claim, as well as the elements and burden of proof she faces in seeking these benefits.[2]

Confused *pro se* claimants like Naimi present special challenges both for Administrative Law Judges (ALJs) and this Court. Recognizing the non-adversarial nature of these hearings, it was incumbent upon the ALJ to address the case of a *pro se* claimant with scrupulous care and attention ensuring both that the claimant makes a knowing and intelligent decision to waive the assistance of counsel while also helping the uncounseled claimant to fully develop her case by scrupulously and conscientiously probing into, inquiring of, and exploring for all the relevant facts. Only after these two duties are fulfilled by the ALJ can we rest assured that the *pro se* claimant's choice to proceed without the assistance of counsel did not result in undue prejudice to the claimant.

---

[2] For example, Naimi's confusion regarding when to file an appeal nearly led to the dismissal of this case on statute of limitations grounds. In addition, despite the fact that the plaintiff's date last insured was March 31, 2023, (Tr. 26), Naimi's appeal focuses almost exclusively upon evidence relating to her medical condition in 2025. (Doc. 34). Likewise, Naimi's appeal fails to recognize that her prior unsuccessful Social Security application now limits her claim to July 2, 2019, the day after the previous ALJ decision, through July 14, 2022, the date of the present ALJ decision. Finally, on appeal Naimi invites us to review evidence that was never provided to the ALJ, something that we may not do. These are but a few examples of how basic legal misunderstandings stemming from Naimi's *pro se* status prejudice her efforts to advance any disability claim.

As discussed below, despite a conscientious effort by the ALJ to perform these duties in Naimi's case, we are unsure that Naimi knowingly and intelligently waived counsel, and it is evident in hindsight that the failure to proceed without the benefit of counsel potentially prejudiced consideration of this claimant's case since a number of her claims may not have been fully developed. Therefore, we will remand for further proceedings in this matter.

## II.    Statement of Facts and of the Case

### A. Background

With our analysis of this *pro se* appeal necessarily focused upon the threshold questions regarding whether Naimi knowingly waived counsel and whether the ALJ fulfilled his obligation to help Naimi, an uncounseled claimant, develop her case by scrupulously and conscientiously probing into, inquiring of, and exploring for all the relevant facts, the relevant facts are as follows:

Naimi has engaged in a *pro se* pursuit of Social Security benefits for nearly a decade. This is Naimi's second Social Security application. Initially, Naimi filed for these benefits in January of 2018, alleging an onset of disability on January 25, 2018. (Tr. 171). Naimi was not represented by counsel in this initial administrative process, although her spouse, a layman, purported to act on her behalf at her April 2019 disability hearing. (Tr. 71-119). Naimi's initial application was denied by an ALJ on

July 1, 2019. (Tr. 171-179). Naimi apparently did not seek judicial review of this adverse disability determination.

Instead, on August 20, 2020, Naimi filed a second *pro se* Title II application for a period of disability and disability insurance benefits, alleging disability beginning January 25, 2018. (Tr. 23). Naimi was born on January 17, 1975, and was 44 years old in July of 2019 after her first application was adjudicated. (Tr. 41). She had at least a high school education, and prior employment as a cashier and home health aide. (Tr. 40-41).

### B. Naimi's Undeveloped Medical and Emotional Claims

Upon a review of the administrative record it appears that, in large part due to her *pro se* status, two aspects of Naimi's disability claim were not fully developed.

The first of these two undeveloped areas of inquiry relates to Naimi's emotional impairments. At the ALJ hearing conducted in this case on March 2, 2022, Naimi clearly described potentially disabling emotional conditions, telling the ALJ that: "I cry all the time and still get upset, and I get nervous to go out of the house." (Tr. 57). The ways in which these emotional impairments directly interfered with Naimi's ability to perform activities of daily living were confirmed in the Third Party Report submitted by her spouse. As the ALJ explained:

> Mr. Naimi reported that the claimant has limitations with lifting, standing, walking, sitting, reaching, postural activities, memory, completing tasks, concentration, understanding, following instructions,

and getting along with others. He also reported that the claimant is able to walk for one block or less before needing to stop and rest for a few minutes, and that she was prescribed a cane in January 2018, which she uses daily. Mr. Naimi stated that the claimant could pay attention for 10 minutes, finish what she starts, and she follows spoken instructions "good," but that she requires assistance with reading recipes. He also stated that the claimant does not handle stress or changes in routine well. Mr. Naimi reported that the claimant does not get along well with authority figures, but that she has not been fired or laid off from a job because of problems getting along with others. He stated that the claimant needs reminders to take care of her personal needs and grooming, and to take medicine.

(Tr. 41).

Moreover, the clinical record, while equivocal, contained material information concerning Naimi's mental health diagnoses and treatment. While some progress notes described her mental state in unremarkable terms, (tr. 445, 562, 581, 651, 666, 679, 745, 1027, 1047), other treatment encounters reported her mood as anxious, nervous and depressed. (Tr. 632, 1036, 1039). On December 15, 2021, her treating Physician Assistant diagnosed Naimi as suffering from a moderate episode of recurrent major depressive disorder and stated that she was: "currently struggling with depression, anxiety, migraine, neuropathy, [and] chronic pain." (Tr. 1036).

Despite this treating source diagnosis of a current major depressive disorder of moderate severity, no further effort was made to develop a medical-vocational assessment of the way in which this impairment affected Naimi's ability to work. Thus, no mental consultative examination was conducted. Moreover, remarkably, at

5

both the initial and reconsideration levels, no state agency psychiatric expert ever considered, or opined upon, Naimi's case. (Tr. 188-204. 207-215). Rather, these state agency opinions were limited solely to Naimi's physical impairments. Thus, the impact of these emotional impairments on Naimi's ability to work remained undeveloped.

A second area where there was an evidentiary void in the record related to Naimi's need to use a cane to ambulate. Naimi claimed that she frequently relied upon a cane to walk or stand, (tr. 348, 386, 389), and her spouse confirmed that "she was prescribed a cane in January 2018, which she uses daily." (Tr. 41). Of the three medical experts who opined regarding Naimi's physical impairments, two—Dr. Kneifati and Dr. Nugent—found that her use of a cane was medically necessary. (Tr. 191, 519). Indeed, Dr. Kneifati, the only physician who actually examined Naimi, categorically stated that: "She could not walk without cane." (Id.) The clinical record, in turn, was equivocal with some notations of a normal gait but other records confirming that Naimi needed assistance in ambulating. For example, a February 2018 treatment note from Naimi's podiatrist indicated that some forms of assistive devices had been ordered for Naimi. That note stated that the treating source: "will order weightbear with Cam walker boot and a walker and then transition to either a cane or no assistive device besides the Cam walker boot." (Tr. 890-891).

6

Despite this evidence, no further effort was made to determine whether a cane had in fact been ordered for Naimi. Nor was the record developed to include any treating source opinions relating to Naimi's need for an assistive device.

## C. **The ALJ Hearing and Decision**

Based upon this somewhat incomplete record, Naimi's case was heard by an ALJ on March 2, 2022. (Tr. 49-70). Recognizing her *pro se* status, at the outset of the hearing the ALJ engaged in a brief colloquy with Naimi reminding her that she could have the assistance of counsel. (Tr. 53). At that time, Naimi indicated that she preferred to proceed without an attorney. (Id.) The ALJ then received testimony from Naimi outlining her physical and emotional impairments, including her frequent crying and depression. (Tr. 56, 60). The ALJ also received testimony from a Vocational Expert, however, the questioning of the expert did not appear to directly address Naimi's emotional impairments or her need to use an assistive device to ambulate. (Tr. 64-70).

Following this hearing, on July 11, 2022, the ALJ entered a decision denying Naimi's disability claim. (Tr. 18-48). This decision did not fully address the undeveloped aspects of Naimi's *pro se* disability application. At Step 1 of the sequential process which governs Social Security appeals, the ALJ found that Naimi met the insured status requirements of the Social Security Act through March 31, 2023, and had not engaged in substantial gainful activity since July 2, 2019, the day

7

after the previously adjudicated period. (Tr. 26). At Step 2, the ALJ found that Naimi suffered from the following severe impairments: degenerative disc disease, degenerative joint disease, migraines, and obesity. (Id.)

Notably, this Step 2 determination did not include any emotional impairments despite the fact that Naimi testified that she cried frequently; her spouse confirmed that she experienced cognitive limitations; and Naimi's treating physician assistant found that she suffered from a moderate major depressive disorder. Instead, without any further development of the record the ALJ dismissed the severity of these mental conditions, stating:

> The claimant testified that she "cries all the time" and takes medication for depression. She reported feeling depressed and crying often during a family medicine visit on December 15, 2021 (Exhibit B18F/38). She also reported anxiety. She reported multiple stressors. Her psychiatric exam showed normal affect, an anxious and depressed mood, normal speech, normal behavior, normal thought content, normal cognition, and normal judgment (Exhibit B18F/40). She was diagnosed with moderate episode of recurrent major depressive disorder. She was started on Cymbalta. The claimant reported no change since starting Cymbalta during a follow-up on February 22, 2022 (Exhibit B18F/42). Her psychiatric exam was unchanged (Exhibit B18F/43).
>
> The claimant's medically determinable mental impairment of depression does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore non-severe.

(Tr. 27).

Remarkably, the ALJ reached this Step 2 conclusion in the face of the treating source opinion, and in the absence of any state agency or consultative examiner opinions which supported the view that this impairment did not limit Naimi's ability to meet the mental demands of the workplace. Thus, this question remained undeveloped. The ALJ then found at Step 3 that Naimi's impairments did not meet any Listing criteria. (Tr. 28-29). In reaching this conclusion, the ALJ determined, without any medical opinion support, that Naimi experienced no limitations in any spheres of mental functioning in a work setting. (Tr. 27-28).

The ALJ then fashioned the following residual functional capacity (RFC) for Naimi:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she is limited to no more than two hours of standing and/or walking in an eight-hour workday. The claimant is limited to occasional postural movements, except she should never use ladders, ropes, or scaffolds. She must avoid concentrated exposure to temperature extremes, humidity, loud noise, vibration, fumes, odors, dusts, gases, and poor ventilation, and even moderate exposure to dangerous machinery and unprotected heights.

(Tr. 29).

This RFC made no provision for Naimi's diagnosed depression. Nor did it account for the second undeveloped area in the record: Naimi's need for assistive devices to aid in ambulation. Despite the fact that one state agency expert and the only reporting source who actually examined Naimi both found that she needed a

9

cane to ambulate, the ALJ dismissed this concern without further factual development stating:

> The undersigned considered the claimant's alleged use of a cane for ambulation but does not find that the medical evidence supports a medically required assistive device. The consultative examination from November 12, 2020, noted that the claimant used a cane and was able to walk without the cane (Exhibit B7F/3-7). The exam report also noted that the claimant had a normal gait, but she was unable to stand on her toes and heels or walk on her toes and heels. Other exams, both prior to and after that consultative exam, noted either an antalgic gait or narrow, but not unsteady gait (Exhibits B2F/4-5; B4F/30-31; B10F/21-22; B11F/16-17; B16F/76-77; B17F/103-105; B19F/12). The undersigned found support for limiting the claimant's standing and walking, as well as environmental limitations, due to her antalgic gait, but does not find that an assistive device is medically necessary for ambulation.

(Tr. 35).

This conclusion left significant factual questions unresolved. Thus, it did not address the report of Naimi's spouse that she was "prescribed a cane in January 2018, which she uses daily." (Tr. 41). Nor did the decision examine the fact that Naimi's podiatrist indicated that some forms of assistive devices had been ordered for Naimi in that the podiatrist stated in February 2018 that he would: "order weightbear with Cam walker boot and a walker and then transition to either a cane or no assistive device besides the Cam walker boot." (Tr. 890-891).

While the record regarding these factual issues remained undeveloped, the ALJ concluded that, while Naimi could not return to her past work, she could perform other work in the national economy. (Tr. 40-42). Therefore, the ALJ found

that Naimi—a claimant who was unschooled in the intricacies of Social Security practice—had not met the stringent standard for demonstrating disability and denied her claim. (Id.)

This *pro se* appeal followed. Naimi's efforts to pursue this appeal without the assistance of counsel further underscored how her *pro se* status potentially prejudiced her case. Naimi's filings have continued to reveal basic confusion regarding matters which are crucial to navigating the Social Security system. In the course of this litigation Naimi has demonstrated a lack of understanding concerning the time frame for appeals; the relevant scope of our review; and the temporal limits of her claim.

> Taking all of these facts into consideration, we are mindful that:
>
> An ALJ owes a duty to a *pro se* claimant to help him or her develop the administrative record. "When a claimant appears at a hearing without counsel, the ALJ must 'scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.'"

Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir. 2003). In this case, while it is clear that the ALJ attempted to make a conscientious and sincere effort to assist Naimi, we find that there remain matters which required further development. Therefore, finding that the duty to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts has not been fully discharged in this case we will remand this case to the Commissioner for further development of these issues.

11

III.   **Discussion**

A. **The ALJ's Responsibilities With Respect to *Pro Se* Claimants**

The legal benchmarks that govern waiver of counsel and the duties of an ALJ when dealing with an unrepresented claimant are familiar and well-settled. In this setting:

> Though a claimant does not have a constitutional right to counsel at a social security disability hearing, she does have a statutory and regulatory right to counsel at such a hearing. 42 U.S.C. § 406; 20 C.F.R. § 404.1705. The claimant must be given notice of the right to counsel and can waive this right only by a knowing and intelligent waiver. See, e.g., Smith v. Schweiker, 677 F.2d 826, 828 (11th Cir.1982). Moreover, where a claimant is *pro se*, the ALJ has a duty to help the claimant develop the administrative record and "must scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir.2003) (internal quotations omitted).Although an ALJ may deny a *pro se* claimant benefits, it is appropriate for a reviewing court to remand a case if there is "a showing of clear prejudice or unfairness at the administrative hearing." Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir.1979); see also Livingston v. Califano, 614 F.2d 342, 345 (3d Cir.1980) ("[I]f it is clear that the lack of counsel prejudiced the claimant or that the administrative proceeding was marked by unfairness due to the lack of counsel, this is sufficient for remand, or reversal."). A determination of whether the claimant waived the right to counsel knowingly and intelligently determines who has the burden of demonstrating whether remand is appropriate. As the Court of Appeals for the Seventh Circuit has explained, "[i]f the ALJ does not obtain a valid waiver of counsel, the burden is on the Commissioner to show the ALJ adequately developed the record." Skinner v. Astrue, 478 F.3d 836, 842 (7th Cir. 2007).

Vivaritas v. Comm'r of Soc. Sec., 264 F. App'x 155, 157–58 (3d Cir. 2008).

Thus, the threshold question we must address is whether Naimi waived her right to counsel in a knowing and intelligent manner. "Unlike other circuits, the Third Circuit has not clearly defined a standard for what an ALJ must do to obtain a 'knowing and intelligent' waiver of a *pro se* claimant's right to counsel." Velez v. Comm'r of Soc. Sec., No. CV 17-02914 (RBK), 2018 WL 6787538, at *2 (D.N.J. Dec. 26, 2018). Thus, following Vivaritas, courts in this circuit have "declin[ed] to adopt a 'rigid' approach that an ALJ must follow to obtain a valid waiver." Id. at *3 (collecting cases). However, there has been one consistent theme through these cases, which rests upon the fact that many Social Security disability claimants suffer from mental impairments. Recognizing that these mental impairments may limit the ability of individual claimants to understand and knowingly waive their right to counsel, courts have repeatedly acknowledged that what might otherwise appear to have been an adequate colloquy may be insufficient to establish waiver by a mentally impaired disability claimant. See e.g., Vivaritas, 264 F. App'x at 161; Parker v. Berryhill, No. CV 16-271, 2017 WL 1022579, at *3 (W.D. Pa. Mar. 16, 2017); George v. Comm'r of Soc. Sec., No. CIV.A. 13-5179 FLW, 2014 WL 3955071, at *3 (D.N.J. Aug. 13, 2014).

13

But the ALJ's duties with respect to *pro se* claimants do not end once there has been a colloquy regarding waiver of counsel. Social Security litigation is a complex, highly technical field. Moreover, it is well-settled that:

> Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits, see Richardson v. Perales, 402 U.S. 389, 400–401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) . . . .

Sims v. Apfel, 530 U.S. 103, 110–11, 120 S. Ct. 2080, 2085, 147 L. Ed. 2d 80 (2000).

The ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits is particularly acute when the claimant is proceeding unaided by counsel. In this setting:

> When a *pro se* claimant waives his or her right to counsel, the ALJ presiding over the claimant's hearing has a heightened duty to help develop the record that goes beyond the base "duty to investigate the facts and develop the arguments both for and against granting benefits." Sims v. Apfel, 530 U.S. 103, 120, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000). The ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir.2003) (quoting Key v. Heckler, 754 F.2d 1545, 1551 9th Cir.1985)). The *pro se* claimant may be prejudiced by the ALJ's failure to observe this heightened duty. Dobrowolsky, 606 F.2d at 407. Thus, "if it is clear that the lack of counsel prejudiced the claimant or that the administrative proceeding was marked by unfairness due to the lack of counsel, this is sufficient for remand, or reversal." Livingston, 614 F.2d at 345; see also Kummer, 2013 WL 5467067 at *3 ("The court may find a proceeding unfair where the ALJ does not develop a complete record and the essential inquiry is whether 'the incomplete record reveals evidentiary gaps which result in

14

prejudice to the claimant.' " (quoting Gauthnney v. Shalala, 890 F.Supp. 401, 410 (E.D.Pa.1995))).

George v. Comm'r of Soc. Sec., No. CIV.A. 13-5179 FLW, 2014 WL 3955071, at *4 (D.N.J. Aug. 13, 2014).

> Simply put it has long been a settled tenet of Social Security practice that:

> An ALJ owes a duty to a *pro se* claimant to help him or her develop the administrative record. "When a claimant appears at a hearing without counsel, the ALJ must 'scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.' " Key v. Heckler, 754 F.2d 1545, 1551 (9th Cir.1985) (quoting Cox v. Califano, 587 F.2d 988, 991 (9th Cir.1978)); Dobrowolsky, 606 F.2d at 407 (noting that an ALJ must "assume a more active role when the claimant is unrepresented"). See generally Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir.1995) ("ALJs have a duty to develop a full and fair record in social security cases.").

Reefer v. Barnhart, 326 F.3d at 380.

### B. **A Remand is Appropriate in this Case**

In this case, the ALJ was presented with a *pro se* claimant who has demonstrated an unclear and uncertain command of Social Security practice and the elements of her claim. Presented with a potentially confused *pro se* claimant, the ALJ attempted to discharge the first duty he owed Naimi by engaging in a brief colloquy with her regarding her opportunity to secure counsel. (Tr. 53). While this brief exchange may be sufficient, see Velez v. Comm'r of Soc. Sec., No. CV 17-02914 (RBK), 2018 WL 6787538, at *3 (D.N.J. Dec. 26, 2018) (discussing elements of a valid colloquy), we need not reach this issue because we find that the ALJ's

15

efforts, while sincere, did not satisfy the second duty owed to *pro se* claimants like Naimi since those efforts did not scrupulously and conscientiously probe into, inquire of, and explore for *all* the relevant facts.

In our view, two material issues remained undeveloped by Naimi's *pro se* presentation and call out for further conscientious exploration. First, Naimi had been diagnosed with a moderately severe episode of a recurrent major depressive disorder. She was prescribed medication for this disorder and, despite this medication, Naimi reported experiencing profound daily distress, stating: "I cry all the time and still get upset, and I get nervous to go out of the house." (Tr. 57).  Moreover, no mental consultative examination was conducted in Naimi's case and, remarkably, at both the initial and reconsideration levels, no state agency psychiatric expert ever considered, or opined upon, Naimi's mental health. (Tr. 188-204. 207-215).

On these facts, we believe that it was incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and further explore the extent to which Naimi's diagnosed depression limited her ability to meet the mental demands of the workplace. This further exploration did not occur. Instead, the ALJ discounted Naimi's emotional impairments entirely at Step 2 of the sequential analysis. Given the incomplete evidence amassed by Naimi as a *pro se* litigant, the ALJ's duty to develop the record required more here and the decision to dismiss these emotional impairments at Step 2 was particularly problematic since,  at step-two of the

16

sequential analysis, the ALJ determines whether a claimant has a medically severe impairment or combination of impairments. Bowen v. Yuckert, 482 U.S. 137, 140-41, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). An impairment is considered severe if it "significantly limits an individual's physical or mental abilities to do basic work activities," 20 C.F.R. 404.1520(c), and is "something beyond a 'slight abnormality which would have no more than a minimal effect on the Plaintiff's ability to do basic work activities.'" McCrea v. Comm'r of Soc. Sec., 370 F.3d at 357, 360 (3d Cir. 2004) (quoting SSR 85-28, 1985 WL 56856 (1985)). Furthermore, the Court of Appeals is clear that the step-two inquiry is a *de minimis* screening device used to cast out meritless claims. Id.; Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003). Without further factual development of the record—which did not occur here—we question whether the ALJ erred in the Step 2 dismissal of these emotional impairments.

In addition, we believe that ALJ had a duty to scrupulously and conscientiously probe into, inquire of, and further explore Naimi's reported need for a cane to ambulate. On this score, we apply familiar benchmarks when assessing whether a claimant needs an assistive device. Thus,

> Social Security regulations provide that an ALJ will not accommodate the use of [an assistive device] unless the claimant first provides "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is

17

needed[.]" SSR 96–9p. Absent such documentation, an ALJ need not accommodate the use of [an assistive device] in a residual functional capacity assessment, even if the claimant was prescribed a[n assistive device] by a doctor.

Williams v. Colvin, No. 3:13-CV-2158, 2014 WL 4918469, at *10 (M.D. Pa. Sept. 30, 2014) (citing Howze v. Barnhart, 53 Fed.Appx. 218, 222 (3d Cir. 2002)).

However, if the claimant makes this threshold showing of medical necessity, then it is incumbent upon the ALJ to directly "address the evidence concerning Plaintiff's use of" the assistive device. Steward v. Comm'r of Soc. Sec., No. CIV.A 08-1741, 2009 WL 1783533, at *5 (W.D. Pa. June 23, 2009). Moreover, the failure to do so may require a remand. Id. In short, where substantial evidence indicates that there is a medical need for a claimant to use a cane or assistive device, the failure to adequately address these issues constitutes a failure of articulation by the ALJ warranting a remand. See e.g., Graver v. Colvin, No. 3:13CV1811, 2014 WL 1746976, at *5 (M.D. Pa. May 1, 2014); Butler v. Astrue, No. CIV.A. 11-376, 2012 WL 1252758, at *7 (W.D. Pa. Apr. 13, 2012).

TINA BROWN, Plaintiff, v. FRANK BISIGNANO, Comm'r of Soc. Sec. Defendant., No. 1:24-CV-1855, 2026 WL 1022418, at *9 (M.D. Pa. Apr. 15, 2026).

Further, when evaluating the medical necessity of an assistive device it is well-settled that, "[t]he standard described in SSR 96–9p does not require that the claimant have a prescription for the assistive device in order for that device to be medically relevant to the calculation of her RFC. Instead, she only needs to present medical documentation establishing the need for the device." Staples v. Astrue, 329 F. App'x 189, 191–92 (10th Cir. 2009). See also Parker v. Astrue, 597 F.3d 920, 922 (7th Cir. 2010), as amended on reh'g in part (May 12, 2010) ("Absurdly, the

administrative law judge thought it suspicious that the plaintiff uses a cane, when no physician had prescribed a cane. A cane does not require a prescription; it had been suggested to the plaintiff by an occupational therapist."); Wolabaugh v. Bisignano, No. 4:24-CV-1989, 2026 WL 561225, at *8 (M.D. Pa. Feb. 27, 2026); SEAN W., Plaintiff, v. COMMISSIONER OF SOCIAL SECURITY, Defendant., No. 20-CV-1653-FPG, 2022 WL 472570, at *3 (W.D.N.Y. Feb. 16, 2022); Krieger v. Comm'r of Soc. Sec., No. 2:18-CV-876, 2019 WL 1146356, at *5 (S.D. Ohio Mar. 13, 2019), report and recommendation adopted, No. 2:18-CV-876, 2019 WL 3955407 (S.D. Ohio Aug. 22, 2019).

In the instant case, significant evidence supported a finding that Naimi's cane use was medically necessary. The only reporting medical source who examined Naimi found that: "She could not walk without cane," (tr. 519), and the first state agency expert to examine her case found that Naimi required a "medically necessary cane for ambulation." (Tr. 191). Moreover, Naimi's spouse stated that she was "prescribed a cane in January 2018, which she uses daily." (Tr. 41). This statement drew some support from the February 2018 treatment notes of Naimi's podiatrist which indicated that he was considering requiring Naimi to use a cane and stated that he would: "order weightbear with Cam walker boot and a walker and then transition to either a cane or no assistive device besides the Cam walker boot." (Tr. 890-891). Given the ambiguities in this evidence, and Naimi's *pro se* status, the ALJ

19

was required to develop the record on the issue of the prescription of the walker before concluding it was not medically necessary. See e.g. De Camacho v. O'Malley, 717 F. Supp. 3d 354, 368 (S.D.N.Y. 2024) ("First, [the plaintiff] testified that she had been 'prescribed' a cane by her doctor. (R.318.) Particularly given the absence of a medical record indicating that a cane had been prescribed, the ALJ had a duty to develop the record on that issue. Whether or not [the plaintiff] had been prescribed a cane is a question of objective fact. It is not an issue of evaluating the claimant's credibility about the extent and limitations of her symptoms.")

These undeveloped factual issues potentially prejudiced Naimi's case since either her mental impairments or need for a cane would have substantially eroded her employment prospects. Therefore, since "it is clear that the lack of counsel prejudiced the claimant . . . , this is sufficient for remand." Livingston v. Califano, 614 F.2d 342, 345 (3d Cir. 1980).

Yet, while case law calls for a remand and further proceedings by the ALJ in this case, nothing in our Memorandum Opinion should be construed as suggesting what the outcome of that final and full analysis should be. Rather, that final assessment of the evidence must await a thorough consideration and development of this evidence on remand by an ALJ. Therefore, nothing in this Memorandum Opinion should be deemed as expressing a view on what the ultimate outcome of

any reassessment of this evidence should be. Rather, that task should remain the duty and province of the ALJ on remand.

## IV.    **<u>Conclusion</u>**

In closing two observations are appropriate. First, we appreciate the challenges the ALJ faced in attempting to help Naimi navigate the intricacies of the Social Security system. Yet, these efforts, while sincere and conscientious, fell short in two respects which now call for further consideration of this case.

Second, we urge Naimi to recognize this decision for what it is, a cautionary note regarding the dangers of trying to litigate legally and medically complex disability claims without the assistance of counsel. Upon remand, we implore Naimi to seek out the aide of experienced counsel before she forays into further disability litigation.

An appropriate order follows.

*<u>S/ Martin C. Carlson</u>*
Martin C. Carlson
United States Magistrate Judge

Dated: May 1, 2026